# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 7, 2006

## STATE OF TENNESSEE v. CHARLES IVORY SMITH

### Appeal from the Circuit Court for Madison County
### No. 05-118     Roy B. Morgan, Jr., Judge

---

### No. W2005-01959-CCA-R3-CD  - Filed April 21, 2006

---

A Madison County Circuit Court jury convicted the defendant, Charles Ivory Smith, of burglary and evading arrest. The trial court imposed a twelve-year sentence for burglary and an eleven-month and twenty-nine-day sentence for evading arrest and ordered the defendant to serve the sentences consecutively as a career offender in the Department of Correction. The defendant asserts that the evidence was insufficient to support his convictions and that the trial court erred in ordering consecutive sentences. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

George Morton Googe, District Public Defender; Joseph T. Howell and Chris R. Whittaker, Assistant Public Defenders, for the appellant, Charles Ivory Smith.

Paul G. Summers, Attorney General and Reporter; C. Daniel Lins, Assistant Attorney General; James G. Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the defendant's unlawful entry into a building at Dudley's Recycling. A Madison County grand jury indicted the defendant for burglary, theft of property under $500, and evading arrest, but the defendant was acquitted of theft. At the trial, Jackson Police Officer Shane Richards testified that he was the chief pilot of the aviation unit for the Jackson Police Department. He said that he flew a helicopter known as Air One for the police department and that the helicopter was equipped with a thermal infrared camera and a spotlight, which allowed him to see at night. He said he flew the helicopter while another officer operated the camera system.

Officer Richards testified that on November 20, 2004, at approximately 10:00 p.m., he was on patrol in the helicopter and received a call to Dudley's Recycling because the security alarm had

been activated. He said they were able to get to Dudley's Recycling within two to two and one-half minutes. He said that when they arrived at the scene, they conducted a thermal imagery search of the property. He said that they did not detect any movement on the first orbit around the perimeter but that on the second orbit, they saw the defendant leaving the building. He said that when he saw the defendant, he told Sergeant Phillip Stanfill to press the record button on the camera. He said the defendant walked across the parking lot and slid through the fence where the gates were held together by a chain. He said the defendant began running east along the railroad tracks. He said he notified Officer Chris King, a responding officer, of the defendant's location. He said it then appeared the defendant was holding something or had picked something up. He said he was keeping his distance from the defendant while trying to keep him contained until more officers could respond. He said he was able to see the defendant from two or three miles away with the camera.

Officer Richards testified that railroad boxcars were parked on the railroad tracks and that the defendant went underneath the cars. He said they could see the defendant looking at them in the helicopter. He said the defendant continued going east underneath the cars. He said the defendant left the railroad tracks and walked down the middle of Vance Street. He said he was directing the responding officers to the area of the defendant's location. He said that the responding officers drove marked police cars and that approximately eleven or twelve officers responded. He said that when some of the officers began to arrive in the area, the defendant began to run, "zig-zagged" across three or four backyards, dodged a few dogs, and hid behind one of the houses. He said he notified Officer Danielle Jones that the defendant was to her immediate right but that as she approached him, the defendant ran west to a house on Lenoir Street. He said that he saw the defendant on the porch of the house and that the defendant disappeared from view. He said he notified officers that the defendant was either in the house or underneath it. He said that they circled the residence while officers surrounded the house but that they had to leave because the helicopter's fuel level was low.

On cross-examination, Officer Richards acknowledged that he could not recognize the individual who left the building because he saw only the heat image from the infrared camera. He acknowledged the video showed the defendant walking along the building but did not show him leave the building. He explained they were having problems with the camera and had to press the record button several times for it to start recording. He acknowledged that he radioed to the other officers that he saw the suspect leave a rear bay door of Dudley's Recycling carrying something in his hand, which he believed to be a bag. He also acknowledged that the defendant appeared to pick up a bag or something from a brushy area near the railroad tracks but that the defendant dropped it on Vance Street.

Jackson Police Officer Danielle Jones testified that she responded to an alarm call on November 20, 2004, at approximately 10:00 p.m. She said that Officer Richards, who was patrolling in Air One, saw the defendant emerge from a rear bay door and that she was listening to radio communications for the defendant's location. She said that based on the instructions she received from Officer Richards, she was able to locate the defendant on Vance Street. She said the defendant was behind a house. She said that she came around the side of the house, that she drew her weapon, and that she told the defendant to get down. She said she chased the defendant to a vacant house at

210 Lenoir Street. She said the defendant went underneath the house and remained hidden there. She said that other officers responded to the house including the district sergeant, Sergeant Slack, and that Sergeant Slack used "Clear-Out" to get the defendant to leave the crawl space. She said Clear-Out is similar to pepper spray or tear gas. She said Sergeant Slack put two canisters of Clear-Out under the house, causing the defendant to come out approximately fifteen to twenty minutes later. She identified the defendant as the man who was under the house and the man upon whom she drew her weapon. She said they found no one else underneath the house.

On cross-examination, Officer Jones testified that Officer Richards reported seeing a black male leave the bay door area of Dudley's Recycling carrying a bag. She said Officer Richards reported that the defendant placed the bag under one of the boxcars.

Jackson Police Sergeant Greg Slack testified that on November 20, 2004, he received a call from Officer Richards relating to this case. He said he parked his patrol car on Peabody Street and began walking westbound along the railroad tracks. He said he encountered the defendant near Vance Street. He said that as he approached the defendant, he stated he was a police officer and that the defendant stopped, looked at him, and ran. He said that when the defendant started running eastbound, the defendant dropped a duffel bag and ran between the houses. He said that he lost contact with the defendant after a brief chase but that he picked up the duffel bag. He said the duffel bag contained a crowbar, a hammer, a prying device, a screwdriver, and a pair of wire cutters. He said those tools classified as burglary tools.

Sergeant Slack testified that he was directed to go to an abandoned house on Lenoir Street, where the defendant was last seen. He said the officers set a perimeter around the house. He said that the screen door was locked and that they did not find anyone inside the house. He said that on the back side of the house there was a crawl space and that it looked like a section of the crawl space had been moved. He said that they looked underneath the house but that it was very dark and dirty. He said he sprayed chemical agents into each corner of the house and rolled a can of Clear-Out under the house, but the defendant did not come out. He said he then sprayed a second can of Clear-Out under the house, which made the defendant come out. He identified the defendant as the man that he saw on the street, that he saw drop the bag of burglary tools, and that he "gassed out" from underneath the house. He said they found no one else underneath the house. On cross-examination, Sergeant Slack acknowledged that none of the tools had been tested for fingerprints. He said he recovered no other physical evidence.

Bobby Joe Dudley testified that he owned Dudley's Recycling and that it was equipped with an alarm system on the doors and motion detectors upstairs. He said that on November 20, 2004, he was called to his business to determine if anything had been taken. He said that when he arrived, the front door was "wide open" and the door to his office was open. He said that the alarm was beeping, that the cash drawer was open, and that a hole had been cut through the side of the metal wall. He said his keys and approximately $60 in change were missing. He said he did not give the defendant permission to be inside the building.

On cross-examination, Mr. Dudley stated that the front door had a deadbolt lock on it and that it had been opened from the inside. He explained that the hole in the metal wall was beside the roll-up door and that the hole had been "hacked through . . . with a hammer or snips . . . somebody had just grabbed a'hold of it and just ripped it." He said his alarm system did not have video surveillance.

Jackson Police Investigator Paul White testified that he was an investigator with the property crimes unit and that he was first made aware of the burglary at Dudley's Recycling on the Monday morning following the Saturday when the burglary occurred. He said that he walked along the railroad tracks where he was told the defendant had walked and that he was looking for tools, a bag, and change. He said that he did not find anything but that the boxcars on the tracks the night of the burglary were no longer present. On cross-examination, Investigator White acknowledged that no fingerprints were taken from Dudley's Recycling and that neither the change nor any other property from Dudley's Recycling was ever found.

The defendant contends that the evidence was insufficient to support the jury's verdict on the burglary charge and that the imposition of consecutive sentencing was excessive. The state asserts the evidence at the trial was clearly sufficient to support the defendant's burglary conviction. The state also asserts the trial court properly imposed consecutive sentencing.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence was insufficient to support the jury's verdict of guilt on the burglary charge. He asserts that although Officer Richards located the defendant with the helicopter's infrared equipment, the equipment did not show the defendant inside the building at Dudley's Recycling. He also asserts Mr. Dudley was not at the business and could not identify the person who entered the building. He asserts that no witnesses saw him inside the building and that no witnesses saw him take anything from the building. He asserts that when he was taken into custody, he did not have the money or keys allegedly stolen from Dudley's Recycling and that no physical evidence existed to link him to Dudley's Recycling or to the burglary tools. The defendant contends that the jury found him guilty of burglary but not guilty of theft and that these verdicts are inconsistent.

The state contends that the evidence presented at the trial was sufficient to support the defendant's burglary conviction. The state asserts Officer Richards testified that he saw the defendant exit the building through a door on the eastside of the building and that he used the infrared camera to videotape the defendant walk across the parking lot and slide through the chain link gates. The state asserts that Officer Richards followed the defendant in the air to the house at 210 Lenoir Street where the defendant was arrested and that he directed the officers to the location. The state asserts a rational trier of fact could have easily determined the person found underneath the house at 210 Lenoir Street was the same person Officer Richards saw leaving Dudley's Recycling. The state asserts the defendant's argument regarding a lack of physical evidence does not negate any elements of the crime of burglary. The state asserts that the verdicts are not inconsistent and that the consummation of the intended felony is not necessary to prove burglary.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence; rather, we presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. <u>See</u> <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. <u>See</u> <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997).

In order for the state to have proved the defendant guilty of burglary beyond a reasonable doubt, it had to satisfy the elements of Tennessee Code Annotated section 39-14-402. The applicable subsection states in pertinent part:

> (a) A person commits burglary who, without the effective consent of the property owner:
> (1) Enters a building other than a habitation (or any portion thereof) not open to the public, with the intent to commit a felony, theft or assault.

T.C.A. § 39-14-402(a)(1).

At the trial, Officer Richards testified that he responded to an alarm call at Dudley's Recycling. He said that he saw the heat image of the suspect leave the building through a rear bay door. He followed the suspect in his helicopter as the suspect walked across the parking lot, slid through the gates, walked down the railroad tracks, went underneath boxcars, ran from the police, and stopped at 210 Lenoir Street. Officers followed Officer Richards' directions to the suspect's location. They determined the suspect was underneath the house and used Clear-Out to get him to come out. No one was found inside the house, and the defendant was the only person found underneath the house. Sergeant Slack testified that as he approached the defendant on the railroad tracks and told him to stop, the defendant dropped a bag and ran. Sergeant Slack picked up the bag and found the bag contained burglary tools. Mr. Dudley testified he did not give the defendant permission to be inside his building. Mr. Dudley said that a hole had been cut in the side of the building and that money and keys were missing. We conclude that a rational juror could have found beyond a reasonable doubt that the defendant committed the burglary and evaded arrest. The defendant is not entitled to relief on this issue.

## II. SENTENCING

No witnesses testified at the sentencing hearing, but the state entered the defendant's presentence report and certified copies of the defendant's prior convictions. The presentence report reflects that the defendant was forty-seven years old and that he had an eighth-grade education. It shows that the last job the defendant held was in 2003, working for a pallet business making $6.50 an hour and that he had one previous job working at a sawmill making $6.00 an hour. The presentence report and certified copies of the defendant's convictions reflect the defendant had

twenty felony convictions for burglary, a felony conviction for theft over $500 but less than $1000, a felony conviction for vandalism, and several misdemeanor convictions. The presentence report also reflects that the defendant's parole was revoked in 1986, 1998, and 2003. The defendant reported that he used cocaine daily and had had a drug problem since 1993.

The state and the defendant were in agreement that the defendant qualified as a career offender. The trial court sentenced the defendant as a career offender to a twelve-year sentence for the burglary conviction and an eleven-month and twenty-nine-day sentence for the evading arrest conviction and ordered the sentences to be served consecutively. The trial court stated that

> consecutive sentencing is appropriate in this case just because of your terrible, terrible record and the circumstances under which the statute allows me to consider it because of your failure to conform in the past. You've just proven that you can't obey the law when you're not incarcerated.

The defendant contends consecutive sentencing was error because concurrent sentencing is more appropriate and should have been imposed. The defendant notes that in State v. Holt, 691 S.W.2d 520, 522 (Tenn. 1984), the supreme court held that "[m]ultiple offenses may more appropriately involve concurrent sentences if the crimes are related." He argues that the burglary and evading arrest convictions were "inextricably related" and that the sentences should be served concurrently.

The state responds that the trial court properly imposed consecutive sentences based on the defendant's extensive criminal record of at least twenty prior felony convictions. The state asserts that it did not find the quote in Holt upon which the defendant relies and that Holt only says "[i]n many instances, concurrent sentencing may be appropriate." The state notes that Holt involved the crimes of possession with intent to sell marijuana and manufacturing marijuana, which are more closely-related than the crimes of burglary and evading arrest. The state asserts two of the criteria of Tennessee Code Annotated section 40-35-115(b) are applicable to this case: that the defendant is a professional criminal who has knowingly devoted his life to criminal acts as a major source of livelihood and that the defendant's record of criminal activity is extensive. The state asserts that although the trial court did not cite section 40-35-115 when ordering consecutive sentencing, it did refer to the defendant's "terrible, terrible record."

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2003).[1] As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper

---

[1] We note that on June 7, 2005, the General Assembly amended Tennessee Code Annotated section 40-35-401. See 2005 Tenn. Pub. Acts ch. 353, § 8. However, the amended code section is inapplicable to the defendant's appeal.

weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Concurrent or consecutive sentencing is left to the sound discretion of the trial court. State v. Hastings, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999).

Consecutive sentencing is guided by Tennessee Code Annotated section 40-35-115(b), which states in pertinent part that the court may order sentences to run consecutively if it finds by a preponderance of the evidence that the defendant is "an offender whose record of criminal activity is extensive." T.C.A. § 40-35-115(b)(2). Rule 32(c)(1) of the Tennessee Rules of Criminal Procedure requires that the trial court "specifically recite the reasons" behind its imposition of a consecutive sentence.

The state asserts the trial court properly imposed consecutive sentencing because the "defendant is an offender whose record of criminal activity is extensive." See T.C.A. § 40-35-115(b)(2). We agree with the state. Although the trial court did not refer specifically to section 40-35-115, it stated consecutive sentencing was appropriate based on the defendant's "terrible, terrible record." The presentence report shows that the defendant had twenty-two prior felonies and that the defendant's parole was revoked three times. On September 21, 2004, the defendant was released from the Department of Correction because the sentence he was serving expired. Two months later, the defendant committed the present offenses. We conclude that the record justifies consecutive sentencing because the defendant had an extensive criminal history and that the trial court did not abuse its discretion.

Additionally, the state asserts that the trial court properly imposed consecutive sentencing because the "defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood." See T.C.A. § 40-35-115(b)(1). We note that in most cases where the classification as a professional criminal is affirmed, the state proved the defendant had a substantial criminal history in addition to significant assets or income but was without legitimate employment to substantiate that income. See State v. Greg Harris, E2003-02834-CCA-R3-CD, Sullivan County, slip op. 21-22 (Tenn. Crim. App. Feb. 23, 2005) (reviewing cases supporting the conclusions that the defendants were professional criminals).

The presentence report shows that the forty-seven-year-old defendant had twenty-two prior felonies, including twenty burglary type offenses, between 1978 and 1998. The report also reflects that the defendant was in and out of jail from 1978 until September 21, 2004. The record reflects that the defendant reported holding only two jobs, one in 2003 at a pallet shop and one at a sawmill, though he could not recall the time frame he worked there. The defendant's step-mother reported the defendant also worked at a furniture company. The record reflects that the defendant earned $6.00 to $6.50 per hour and that he reported using cocaine on a daily basis, an addiction he had since 1993. The record shows the defendant had a lengthy criminal history involving mostly burglary offenses, but it is devoid of any evidence showing that the offenses provided a major source of income or that the defendant maintained assets of substantial value. Therefore, we affirm the trial court's decision to impose consecutive sentencing based only on its finding that the defendant's

record of criminal activity was extensive.  <u>See</u> T.C.A. § 40-35-115(b)(2).  The defendant is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing and the record as a whole, we affirm the judgments of the trial court.

 

 

_____

JOSEPH M. TIPTON, JUDGE